# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ANGELA T. BARBEE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:15-CV-193-VEH |
| | ) |
| **NANCY A. BERRYHILL,** ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,** | ) ) ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

**I.  INTRODUCTION**

This case is back before the Court following a remand. Plaintiff Angela T. Barbee brings this action under 42 U.S.C. § 405(g). Ms. Barbee seeks a review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for disability insurance benefits ("DIB"). Ms. Barbee exhausted the administrative remedies available before the Commissioner. This case is now ripe for judicial review under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

The Court carefully reviewed the record in this case and **AFFIRMS** in part, **REVERSES** in part, and **REMANDS** the ALJ's decision.

## II. RELEVANT BACKGROUND

The alleged onset date is January 10, 2010. (Tr. 624). Ms. Barbee suffers from numerous severe impairments, but the ALJ found that none rendered her disabled. (*Id.* at 626, 639). Ms. Barbee filed an application for Social Security benefits on August 18, 2011. (*Id.* at 708). The Social Security Administration denied that application on December 30, 2011. (*Id.*). Administrative Law Judge Cynthia G. Weaver held a hearing on February 20, 2013. (*Id.*). The ALJ issued her first decision on May 17, 2013, which was unfavorable to Ms. Barbee. (*Id.* at 743). Ms. Barbee requested the Appeals Council review the claim. (*Id.* at 750). They refused. (*Id.*).

Ms. Barbee then filed her complaint in the Northern District of Alabama on January 30, 2015. (Doc. 1). Before the Commissioner filed an answer, she filed an unopposed motion to remand the case based on Sentence 6. (Doc. 7). The reason for the remand was that there was not a good recording of the hearing. (*Id.* at 2-3). The case went back down, and the ALJ held a new hearing on September 21, 2016. (Tr. 624). The ALJ then issued another decision, which was still unfavorable to Ms. Barbee. (*Id.* at 639). Ms. Barbee asked the Appeals Council to review her case. (*See id.* at 615-16). The Appeals Council refused to "assume jurisdiction." (*Id.*). Ms. Barbee moved to reopen her case before the Court, and the Court granted the request. (Docs. 9, 10). Briefing was completed on March 23, 2018. (Docs. 16, 17, 18). The

matter accordingly is ripe for determination.

### III. STANDARDS

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has

been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

**IV.    STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

4

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## V. FINDING OF THE ADMINISTRATIVE LAW JUDGE

After considering the record, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

5

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 10, 2010[,] through her date last insured of December 31, 2012 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, migraine headaches, anxiety and depression (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She can occassionally balance, stoop, kneel, crouch and crawl. She can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. She can occasionally push and pull with the left lower extremity. She can frequently reach overhead with the right upper extremity. She should avoid concentrated hot and cold temperature extremes. She should avoid dangerous, moving, unguarded machinery and unprotected heights. She has the mental residual functional capacity to understand, remember and carry out simple instructions and tasks. She is limited to job[s] involving infrequent and well-explained work place changes. She can concentrate and remain on task for two hours at a time, sufficient to complete an eight-hour workday.

6. Through the date last insured, the claimant was capable of performing past relevant work as a convenience store manager (DOT #211.462-010) and convenience store worker (DOT #185.167-910). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 10, 2010, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(f)).

(Tr. 626-39) (emphasis omitted).

## VI. ANALYSIS

### A. The ALJ Did Not Err at Step Two

#### 1. No Doctor Diagnosed Ms. Barbee with Fibromyalgia Prior to her Date Last Insured

Ms. Barbee first argues that the ALJ erred at Step Two by not finding her fibromyalgia to be a severe medically determinable impairment. (*See* Doc. 33 at 27-36). In response, the Commissioner points out that the ALJ properly determined that Ms. Barbee was not diagnosed with fibromyalgia using SSR 12-2p. (*See* Doc. 17 at 7) (citing Tr. 628).

The first test for fibromyalgia the 1990 ACR Criteria for the Classification of Fibromyalgia is:

[A] person has an MDI of FM if he or she has all three of the following:

1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. . . .

2. At least 11 positive tender points on physical examination. . . .

> 3. Evidence that other disorders that could cause the symptoms or signs were excluded.

SSR 12-2p. The second test for fibromyalgia under the 2010 Preliminary Diagnostic Criteria is:

> Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following criteria:
>
> 1. A history of widespread pain (see section II.A.1.);
>
> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

*Id.* (internal footnotes omitted). The ALJ evaluated Ms. Barbee under both tests. (Tr. 628). However, the ALJ determined that there was no tender-point test, nor "evidence that other reasons for [the] symptoms or signs were excluded." (*See id.*). Ms. Barbee focuses her efforts on proving that she met the requirements under the 2010 Preliminary Diagnostic Criteria. (*See* Doc. 16 at 33).

Ms. Barbee primarily relies on rheumatologist Dr. Bell. (*See* Doc. 16 at 31-36). She argues that "[her] treatment with Dr. Bell and diagnosis of fibromyalgia comply with the 2010 ACR Preliminary Diagnostic Criteria." (*See id.* at 33). The record reflects that Dr. Bell, in a letter, diagnosed Ms. Barbee on July 16, 2013, with

8

fibromyalgia. (Tr. 1370, 1459); (*see* Doc. 16 at 11). The relevant period in this case is between January 10, 2010, and December 31, 2012. (*See* Tr. 626).[2] Importantly, the letter from Dr. Bell does not indicate that he believes Ms. Barbee had fibromyalgia prior to December 31, 2012. (*See id.* at 1370). This is crucial. For the Court to say that the ALJ erred in determining that Ms. Barbee did not have fibromyalgia prior to the date last insured essentially puts the *Court* in the position of diagnosing this impairment during the relevant time period. The Court is in no position to look at medical records and diagnose impairments that a medical doctor had the chance to (but did not) diagnose within the relevant time period (or at the very least indicate that a diagnosis relates back to the relevant time period). This is so despite Ms. Barbee's attorney's well constructed argument that her medical records support a fibromyalgia diagnosis prior to the date last insured. (*See* Doc. 16 at 33).

Ms. Barbee cites to the medical records to argue that she did indeed have fibromyalgia prior to December 31, 2012. (*See* Doc. 16 at 33-35). Additionally, she claims that Dr. Bell could not have diagnosed her fibromyalgia on December 20, 2012, because of the requirement of three months of widespread pain. (*See* Doc. 18 at 6). Ms. Barbee strongly implies that the three month clock for pain started on the

---

[2] "DIB appeal requires a showing of disability on or before [the date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

9

September 11, 2012, visit. (*See* Doc. 16 at 33) (noting the September 11, 2012, visit as the first citation in favor of the three month requirement).³ Three months from September 11, 2012, is before December 20, 2012. Accordingly, it is unclear why the three month temporal requirement for fibromyalgia prevented Dr. Bell from diagnosing Ms. Barbee before her date last insured, as Ms. Barbee's attorney argues.

In short, the ALJ did not err in not finding fibromyalgia to be a severe impairment during the relevant time period.

2. SSR 83-20 Does Not Apply in These Circumstances

Ms. Barbee relies on SSR 83-20 to argue that "the ALJ should have considered a medical advisor regarding the onset date of her fibromyalgia." (*See* Doc. 16 at 34-36). SSR 83-20 states, in part:

> Precise Evidence Not Available--Need for Inferences
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a <u>disabling</u> impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a <u>disabling level of severity</u> depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. <u>At the hearing, the administrative law judge (ALJ) should call on the services of a medical</u>

---

³ Ms. Barbee began her treatment with Dr. Bell on August 16, 2012. (See Tr. 1139-1143). In her reply brief, Ms. Barbee also implies that August 16, 2012, is the first date for the three month fibromyalgia requirement. (*See* Doc. 18 at 5). December 20, 2012, (the date where Dr. Bell arguably could have diagnosed fibromyalgia but did not) is more than three months later than August 16, 2012.

10

> advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20 (emphasis added).

Ms. Barbee relies on *March v. Massanari* to support her case. (*See* Doc. 16 at 35). However, the Eleventh Circuit further explained the *March* case in *Caces*:

> The ALJ in *March* found that the claimant was not disabled before the date last insured, based on the absence of sufficient medical evidence for the period of insurance from which to ascertain the date of onset. All of March's physicians who treated him several years after the date he was last insured, however, determined that he evidenced signs of bipolar disorder at least six years before his insured status ended. Thus, the uncertain date of onset for March would need to be inferred, given the sparse medical record predating the date last insured and the overwhelming evidence that came to light after the date last insured from his then treating physicians. The circumstances of *March* presented precisely the situation under SSR 83–20 calling for a medical advisor to assist in determining an inferred onset date.

*See Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014). "The plain language of SSR 83–20 indicates that it is applicable only after there has been a finding of disability and it is then necessary to determine when the disability began." *Id.* (citing *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224–25 (11th Cir.2001)) (emphasis added).

Crucially, here there has not been any finding of disability. Additionally, the medical record prior to the date last insured is not "sparse." *See id.* at 938-39. Accordingly, the ALJ was not required to use the services of a medical advisor

pursuant to SSR 83-20.

### B. The ALJ Erred When She Failed To Address Treatment Records That Spoke to the Impairment She Found Not To Be Disabling

Ms. Barbee's argues that "the ALJ's determination concerning [her] subjective statements is not based on substantial evidence." (*See* Doc. 16 at 45-55) (emphasis and capitalization omitted). The Court agrees.

Here is the Eleventh Circuit pain standard:

> This court has established a three part "pain standard" that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *See Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986). The standard also applies to complaints of subjective conditions other than pain. *Jackson v. Bowen*, 873 F.2d 1111, 1114 (8th Cir.1989).
>
> The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir.1986); *Landry*, 782 F.2d at 1152. If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988); *Hale*, at 1054; *MacGregor*, 786 F.2d at 1054.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

Ms. Barbee argues that "[t]he ALJ incorrectly rejected [her] testimony concerning migraine headaches." (*See* Doc. 16 at 48-51) (emphasis omitted). In support, Ms. Barbee points to her migraine medication and treatment. (*See id.* at 49-50). She concedes that her migraines were "controlled" but "never fully." (*See id.* at 50-51). She cites three cases and one SSR in support. (*See id.* at 51) (citing *Strickland v. Astrue*, 493 F. Supp. 2d 1191, 1198 (N.D. Ala. 2017); *Davis v. Astrue*, 487 F. Supp. 2d 1342, 1349-50 (N.D. Ala. 2007); *Thompson v. Barnhart*, 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2007); SSR 16-3p). The Commissioner responds by arguing that the migraine treatment was "conservative" and effective. (*See* Doc. 17 at 19-20). The Commissioner argues that the ALJ fully considered Ms. Barbee's migraines. (*See id.* at 20). The ALJ briefly discussed migraines in her opinion. (*See* Tr. 634-35).

The Court notes that the relevant time period in this case is between January 10, 2010, and December 31, 2012. (*See* Tr. 626). Accordingly the records cited by both parties outside that time period are of limited utility unless they speak to Ms. Barbee's condition during that time period. *See Hughes v. Comm'r of the SSA*, 486 F. App'x 11, 13 (11th Cir. 2012) ("An individual claiming Social Security disability benefits must prove that she is disabled, *see Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), and for DIB, <u>must demonstrate she was disabled on or before her date last insured</u>, *see Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).") (emphasis added); *id.*

13

(citing sources) ("In order to qualify for DIB, an individual must prove that her disability existed prior to the end of her insured status period, and, after insured status is lost, a claim will be denied despite her disability.").

On balance, the Ms. Barbee has the better of the arguments. In particular, the Court notes that the ALJ appeared to completely ignore several probative exhibits regarding Ms. Barbee's headaches. The ALJ discussed why she did not find the migraines "disabling." (*See* Tr. 634-35). However, the ALJ's analysis was underdeveloped and insufficient. Specifically, in the course of that discussion, she only references exhibit B30F. (*See id.* at 635). In defending the ALJ's opinion on migraines, the Commissioner also cites primarily to Exhibit B30F. (*See* Doc. 17 at 18-20). However, Ms. Barbee points the Court to other records regarding her migraines. (*See* Doc. 16 at 49-50). In particular, the ALJ did not refer to the records from Dr. Hill. (*See* Tr. 634-35).[4]

"An ALJ is required to consider all of the evidence in the claimant's record when making a disability determination." *King v. Astrue*, 2010 WL 1038476, *6 (M.D. Fla. Mar. 19, 2010) (citing 20 C.F.R. §404.1520(a)). However, it is also true that "[t]he ALJ is not required to explicitly mention every piece of evidence so long

---

[4] These are contained in Exhibits B10F, B21F, and B25F. Not all of these records are chronologically relevant, but some of them are.

as the decision considers the claimant's medical condition as a whole." *Law v. Colvin*, 681 F. App'x 828, 833 (11th Cir. 2017) (citing *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).

In this case, the records show Ms. Barbee's struggle with migraines. (*See* Tr. 532-38). Ms. Barbee brought SSR 16-3p to the Court's attention. (*See* Doc. 16 at 51). In relevant part, that rule states:

> Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.

SSR 16-3p (footnote omitted). Several treatment notes in Exhibit B21F show the various medications that Ms. Barbee was taken on and off of. (*See* Tr. 538, 535, 534, 532). These treatment notes also discuss Ms. Barbee's reported pain levels. (*See id.* at 530, 532, 534, 535, 538). They discuss the other specialists that were brought in to help treat Ms. Barbee. (*See id.* at 530) (noting Dr. Ciafrini); (*id.* at 532) (noting Dr. Russell the neurologist); (*id.* at 532) (noting Dr. Pegram the sleep doctor). These records discuss what Ms. Barbee could and could not do. (*See id.* at 532) ("She has not been able to do her normal activities that she was doing before."); (*id.* at 530) ("Her pain management allows her to do light housework and occasionally get out to go to church."). The records also seem to opine on the cause of the headaches. (*See*

*id.* at 534) ("Her pain has been generating more migraine headaches.").

In this case, "the ALJ neglected to discuss [Dr. Hill's medical records] . . . much less assign it a particular weight." *Baez v. Comm'r of Soc. Sec.*, 657 F. App'x 864, 871 (11th Cir. 2016). This is important because, unless the ALJ considered this evidence and stated why it deserves little weight, the Court "'cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.'" *See id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). For this reason, the Court determines that a remand is the appropriate course of action.

Additionally, on remand, the ALJ should more fully consider the medical records from Dr. Russell regarding Ms. Barbee's migraines. The ALJ cited Dr. Russell for the proposition that "[t]reatment was conservative and routine." (*See* Tr. 635) (citing Tr. 1250). However, that same medical record also stated that "[Ms. Barbee] is having fairly frequent headaches. They can occur several times per week." (*See* Tr. 1250). He noted that Ms. Barbee suffers from two different types of headaches. (*See id.*) (discussing her migraine headaches and neck headaches). Dr. Russell also stated that "[i]n general it is difficult to treat headaches in the setting of someone with chronic pain and someone being on chronic pain medications." (*Id.*). "It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). The

ALJ needs to provide a more thorough discussion of the relevant evidence here.

At her hearing, Ms. Barbee spoke to her migraines. (*See* Tr. 661) (describing the severity of her migraines); (*id.* at 665) ("They put me down. It's hours. I mean the [migraine headaches] put you down for the whole day, and then I'm sick the whole next day."); (*id.* at 667-668) (discussing the length of her migraines). Because the ALJ failed to consider the treatment records and notes from Dr. Hill, while at the same time declining to find Ms. Barbee's migraines disabling, the Court is unable to affirm. The case will be remanded for the ALJ to at least consider, and write to, these medical records.

### C. The Court Declines To Reach Ms. Barbee's Other Arguments

Having found that the ALJ needs to address relevant evidence in the record that speaks to an impairment she did not find disabling, the Court declines to reach Ms. Barbee's additional arguments.

### D. The Court Declines To Reassign the Case to a New ALJ

Ms. Barbee asks the Court to "assign the claim to an alternate ALJ" on remand. (*See* Doc. 16 at 56); (*see also id.* at 36) ("Because her claim has previously been remanded twice by the Court and the ALJ has issued two unfavorable decisions, Ms. Barbee requests her claim be assigned to a different ALJ."). On review, the Court declines to reassign the claim. Ms. Barbee has not given the Court a compelling reason

to do so. *See Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996) (instructing the district court "to order a new hearing before another ALJ" when the ALJ made "objectionable comments").

**VII. CONCLUSION**

The Court declines to say that Ms. Barbee is disabled. That is a question the Commissioner will determine on remand. However, before that determination can be made, the Commissioner must consider the entire record, especially exhibits that speak to an impairment the ALJ finds not to be disabling. For these reasons, the decision of the Commissioner is due to be, and hereby is, **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for the Commissioner to consider the impact of the medical records mentioned in this opinion.

    **DONE** and **ORDERED** this the 24th day of July, 2018.

                                                 **VIRGINIA EMERSON HOPKINS**
                                                 United States District Judge