# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ANGELA T. BARBEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:15-CV-193-VEH** |
| | ) | |
| **NANCY A. BERRYHILL,** *Acting* | ) | |
| *Commissioner, Social Security* | ) | |
| *Administration*, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Angela T. Barbee's Motion for Award of
Attorney's Fees and Costs (doc. 22) (the "Motion") pursuant to the Equal Access
to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), filed on September 6, 2018.
Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security
Administration, (the "Commissioner") filed her opposition (doc. 23) to the Motion
on September 19, 2018. Plaintiff then filed her reply brief (doc. 24) in support of
the Motion on September 28, 2018. Thus, the Motion is ripe for review. For the
reasons stated in this opinion, the Motion is due to be **GRANTED** in part and
**DENIED** in part.

## I.     PROCEDURAL HISTORY

Plaintiff initiated this action on January 30, 2015, seeking a review of a final adverse decision of the Commissioner, who denied her application for disability insurance benefits. (Doc. 1 at 1-2). On June 2, 2015, the Commissioner filed an unopposed Motion for Remand (doc. 7) pursuant to sentence six of 42 U.S.C. § 405(g). The Motion for Remand sought a sentence-six remand of the social security appeal "for further administrative proceedings" because "the recording of the oral administrative hearing in this case [was] defective in that it [was] partially inaudible due to a malfunction of computer equipment." (Doc. 7 at 2). The Court granted the Motion for Remand on June 3, 2015. (Doc. 8).

After proceedings at the administrative level, Plaintiff filed a Motion To Reopen Case for Further Review (doc. 9) on September 6, 2017. The Court granted the Motion To Reopen Case for Further Review on November 1, 2017. (Doc. 10). The Commission then filed its Answer (doc. 11) on November 27, 2017. Briefing was completed on March 23, 2018. (Docs. 16, 17, 18). On July 24, 2018, the Court issued its Memorandum Opinion (doc. 19) and Final Order (doc. 20) affirming in part and reversing in part the decision of the Commissioner and remanding the case pursuant to sentence four of 42 U.S.C. § 405(g).

Finally, on September 6, 2018, Plaintiff filed the Motion (doc. 22), which was then briefed by the parties. (Docs. 23, 24).

## II. STANDARD

The EAJA provides in relevant part as follows:

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a <u>prevailing party</u> other than the United States <u>fees and other expenses</u>, in addition to any costs awarded pursuant to subsection (a), <u>incurred by that party in any civil action</u> (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, <u>unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust</u>.

(B) A party seeking an award of fees and other expenses shall, <u>within thirty days of final judgment in the action</u>, submit to the court an application for fees and other expenses . . . .

28 U.S.C. §§ 2412(d)(1)(A)-(d)(1)(B) (emphases added). Accordingly, the

Eleventh Circuit "has recognized that three statutory conditions must be satisfied

before a district court can award EAJA attorney's fees" and other expenses. *Myers*

*v. Sullivan*, 916 F.2d 659, 666 (11th Cir. 1990) (citing *Taylor v. Heckler*, 778 F.2d

674, 676 (11th Cir. 1985)). "First, the claimant must file an application for fees

'within thirty days of final judgment in the action.'" *Id.* (quoting 28 U.S.C.

§ 2412(d)(1)(B)). "Second, assuming the fee application was timely filed, the

claimant must qualify as a 'prevailing party.'" *Id.* "[Third], if the claimant is a

prevailing party who timely filed an EAJA fee application, then the claimant is

entitled to receive attorney's fees unless the government can establish that its

positions were 'substantially justified' or that there exist 'special circumstances' which countenance against the awarding of fees." *Id.* Additionally, if a claimant is eligible for an award of attorney's fees and other expenses, the attorney's fees and other expenses must have been incurred "in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action." 28 U.S.C. § 2412(d)(1)(A).

### A.   Attorney's Fees

After determining whether a claimant meets the statutory conditions necessary to receive an award of attorney's fees under the EAJA, the district court must calculate an appropriate award of attorney's fees. The EAJA provides in relevant part as follows:

> The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour <u>unless the court determines that an increase in the cost of living</u> or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A) (emphasis added). "EAJA fees are calculated under the lodestar method by examining the attorney's reasonable hours expended and [his] reasonable hourly rate." *Astrue v. Ratliff*, 560 U.S. 586, 602 (2010). Ultimately,

however, "the district court has discretion in determining the amount of a fee award," including discretion in determining the reasonable hours expended and the reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

For the reasonable hourly rate, the EAJA "establishes a two-step analysis." *Meyer v. Sullivan*, 958 F.2d 1029, 1033 (11th Cir. 1992). "The first step in the analysis . . . is to determine the market rate for 'similar services [provided] by lawyers of reasonably comparable skills, experience, and reputation.'" *Id.* (second alteration in original) (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). "The second step, which is needed only if the market rate is greater than $[125] per hour, is to determine whether the court should adjust the hourly fee upward from $[125] to take into account an increase in the cost of living, or a special factor." *Id.* "[A] court is itself an expert on the question [of a reasonable hourly rate] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Brungardt v. Commissioner*, 234 F. App'x 889, 891 (11th Cir. 2007) (second alteration in original) (quoting *Norman*, 836 F.2d at 1303).

For the reasonable hours expended, "the fee applicant bears the burden of . . . documenting the appropriate hours expended." *Hensley*, 461 U.S. at 437.

5

Then, the district court should use its discretion to "[e]xclud[e] excessive or otherwise unnecessary hours" for which an attorney "would not bill a client of means who was seriously intent on vindicating similar rights." *Norman*, 836 F.2d at 1301 ("In the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court."); *see also Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc))). However, the district court "should bear in mind that the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." *Norman*, 836 F.2d at 1306. Further, "the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary," and "the objections and proof from fee opponents" must also be "reasonably precise." *Id.* at 1301. ("As the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents.").

Finally, after calculating the lodestar, "the court must next consider the necessity of an adjustment for results obtained." *Id.* at 1302. Regarding

6

adjustments to the lodestar, the Eleventh Circuit has stated as follows:

> If the result was excellent, then the court should compensate for all hours reasonably expended. If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. <u>Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised.</u>

*Id.* (emphasis added) (citations omitted).

## B.     Other Expenses

The EAJA provides that, in addition to attorney's fees, the "fees and other expenses" that can be awarded include "the reasonable expenses of expert witnesses[] [and] the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A).

## III.   ANALYSIS

In the Motion, "Plaintiff asks for an award of attorney's fees in the amount of $16,799.37 and costs of $625.68 to be paid directly to [P]laintiff's attorney" "pursuant to the [EAJA], 28 U.S.C. § 2412(d)." (Doc. 22 at 1). The Court will address Plaintiff's request as follows. First, the Court will determine whether

Plaintiff has met the statutory conditions to be eligible for an award of attorney's fees and other expenses. Second, the Court will determine whether to award Plaintiff her requested $16,799.37 in attorney's fees. Third, the Court will determine whether to award Plaintiff her requested $625.68 in costs. Fourth, the Court will determine to whom the attorney's fees and costs should be paid: Plaintiff or Plaintiff's attorney.

A.    **Plaintiff Meets the Statutory Conditions and Is Eligible for an Award of Attorney's Fees and Other Expenses**

Plaintiff meets all statutory conditions and is thus eligible for an award of attorney's fees and other expenses. Before addressing the three statutory conditions recognized by the Eleventh Circuit, the Court will first address whether, as required by the EAJA, Plaintiff "incurred [the attorney's fees and other expenses] . . . in [a] civil action." 28 U.S.C. § 2412(d)(1)(A). Here, Plaintiff seeks attorney's fees and other expenses both for the time spent on her social security appeal before this Court and for the time spent at the administrative level between the sentence-six remand on June 3, 2015 (doc. 8) and the reopening of the case in this Court on November 1, 2017 (doc. 10). (*See* doc. 22-2 at 9-11). Plaintiff can clearly recover attorney's fees and other expenses for the time spent on her social security appeal before this Court because the EAJA states that the term "civil

action" "includ[es] proceedings for judicial review of agency action." *See* 28 U.S.C. § 2412(d)(1)(A). Further, Plaintiff can also recover attorney's fees and other expenses for the time spent at the administrative level after the sentence-six remand. Plaintiff is allowed to do so because "[w]ith a 'sentence-six remand' the district court retains jurisdiction and enters judgment after the remand proceedings are completed." *Jackson v. Chater*, 99 F.3d 1086, 1089-90 (11th Cir. 1996). "[I]n those cases where the district court retains jurisdiction of the civil action and contemplates entering a final judgment following the completion of administrative proceedings, a claimant may collect EAJA fees for work done at the administrative level." *Melkonyan v. Sullivan*, 501 U.S. 89, 97 (1991) (citing *Sullivan v. Hudson*, 490 U.S. 877, 892 (1989)). Thus, Plaintiff can recover attorney's fees and other expenses both for the time spent on her social security appeal before this Court and for the time spent at the administrative level after the sentence-six remand.

Now, the Court will address the three statutory conditions recognized by the Eleventh Circuit. Plaintiff meets all three conditions.

1.    Plaintiff timely filed an application for fees within 30 days of final judgment in the action

The first statutory condition is that "the claimant must file an application for fees 'within thirty days of final judgment in the action.'" *Myers*, 916 F.2d at 666

(quoting 28 U.S.C. § 2412(d)(1)(B)). A "final judgment" is defined as "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G). Thus, "[a]n EAJA application may be filed <u>until</u> 30 days after a judgment becomes 'not appealable'—*i.e.*, 30 days after the time for appeal has ended." *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993) (emphasis added) (citing 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G); *Melkonyan*, 501 U.S. at 102).

A "judgment authorized by sentence four, [including a sentence-four] remand, . . . become[s] a 'final judgment'—as required by § 2412(d)—upon expiration of the time for appeal." *Id.* at 297. Because a judgment against the United States, its agencies, or its officers sued in their official capacities can be appealed "within 60 days after entry of the judgment," FED. R. APP. P. 4(a)(1)(B), the deadline for filing an EAJA application after a sentence-four remand is 90 days after the entry of judgment.

Here, the Court entered its Final Order affirming in part and reversing in part the decision of the Commissioner and remanding the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) on July 24, 2018. (Doc. 20). Thus, Plaintiff had until 90 days later, October 22, 2018, to file the Motion. Because the Motion was filed on September 6, 2018, the Motion is timely,

and the first statutory condition is met.[1]

### 2. Plaintiff is a prevailing party

The second statutory condition is that "the claimant must qualify as a 'prevailing party.'" *Myers*, 916 F.2d at 666. The Court will first address whether Plaintiff qualifies as a "party" under the EAJA, and, if so, the Court will then address whether Plaintiff qualifies as a "prevailing party."

Under the EAJA, a "party" is defined, *inter alia*, as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Here, Plaintiff states in an affidavit (doc. 22-1) executed by her that "[a]t the time this action was begun[,] my net worth was less than two million dollars." (*Id.* at 1, ¶ 2). Thus, Plaintiff is a "party" under the EAJA.

Because Plaintiff is a "party," the Court will now address whether Plaintiff qualifies as a "prevailing party." "[A] party who wins a sentence-four remand

_____

[1] More specifically, Plaintiff filed the Motion 44 days after the Court entered its Final Order. The Court notes that there is some language in the Supreme Court's opinions that suggest that a motion for attorney's fees under the EAJA cannot be filed until after the time to file a notice of appeal has run. *See e.g.*, *Schaefer*, 509 U.S. at 298 ("In sentence four cases, the filing period begins after the final judgment ('affirming, modifying, or reversing') is entered by the court and the appeal period has run, so that the judgment is no longer appealable." (emphases added) (quoting *Melkonyan*, 501 U.S. at 102)). This would mean that because Plaintiff filed her Motion before the 60-day deadline to file a notice of appeal had run, Plaintiff filed her Motion too early. However, the Supreme Court has made clear that a motion for attorney's fees pursuant to the EAJA is timely if it is filed when the judgment is still "appealable." *See id.* at 303 ("[T]he District Court's April 4 order remained 'appealable' at the time that Schaefer filed his application for EAJA fees, and thus the application was timely under § 2412(d)(1)." (emphases added) (footnote omitted)). Thus, Plaintiff did not file her Motion too early.

11

order is a prevailing party," *Schaefer*, 509 U.S. at 302. Because the Court entered a sentence-four remand order (doc. 20), which is the relief that Plaintiff sought, Plaintiff is a prevailing party. Thus, the second statutory condition is met.

        3.      <u>The Commissioner has not established that its positions were substantially justified or that there exist any special circumstances which countenance against the awarding of fees</u>

The third statutory condition is that "the government [has not] establish[ed] that its positions were 'substantially justified' or that there exist 'special circumstances' which countenance against the awarding of fees." *Myers*, 916 F.2d at 666. "The government bears the burden of showing that its position was substantially justified." *Stratton v. Bowen*, 827 F.2d 1447, 1450 (11th Cir. 1987) (citing sources).

Here, the Commissioner does not argue that its position was substantially justified. Further, the Commissioner does not argue that there are special circumstances that countenance against awarding fees, and the Court notes that there do not appear to be any such circumstances. Thus, the third statutory condition is met.

Thus, Plaintiff meets all statutory conditions and is eligible to receive an award of attorney's fees and other expenses under the EAJA. Accordingly, the Court will now determine whether the amount of attorney's fees and other

expenses that Plaintiff requests is appropriate.

**B.    The Court Will Award Plaintiff $16,745.34 in Attorney's Fees**

Although Plaintiff requests "an award of attorney's fees in the amount of $16,799.37" (doc. 22 at 1), the Court will only award Plaintiff $16,745.34 in attorney's fees.[2] The Court arrived at $16,745.34 by using the lodestar method. First, the Court calculated the reasonable hourly rate and reduced Plaintiff's requested hourly rates for 2015 and 2018 so that they would be below the statutory cap. Second, the Court determined the number of reasonable hours expended by Plaintiff's attorney. Although the Commissioner objected to the number of hours for which Plaintiff requested attorney's fees, the Commissioner did not offer "reasonably precise . . . proof," *Norman*, 836 F.2d at 1301, as to why Plaintiff's requested number of hours were not reasonable. Upon due consideration, the Court found all of Plaintiff's requested hours reasonable. Third, the Court determined that no adjustment to the lodestar was necessary.

1.    <u>The Court will award attorney's fees at the following</u>

---

[2]  The Court notes that while Plaintiff repeatedly requests an attorney's fees award of $16,799.37 (doc. 22 at 1; doc. 22-3 at 1, 4, 9), Plaintiff states once that she is requesting $15,745.15 in attorney's fees. (Doc. 22-3 at 4) ("[Plaintiff's] request for attorney fees in the amount of $15,745.15 is reasonable and should be awarded by this Court."). The Court will treat this reference to $15,745.15 as a typo and thus focus only on Plaintiff's repeated requests for attorney's fees of $16,799.37. Thus, although $15,745.15 is less than the $16,745.34 in attorney's fees that the Court will award Plaintiff, the Court will not reduce its award of attorney's fees to conform with Plaintiff's one-time reference to $15,745.15.

reasonable hourly rates: (1) 2015: $190.28; (2) 2016: $190.84; (3) 2017: $196.78; (4) 2018: $201.34

To calculate the reasonable hourly rate, the Court will begin with the first step recognized in *Meyer* and "determine the market rate for 'similar services [provided] by lawyers of reasonably comparable skills, experience, and reputation.'" *Meyer*, 958 F.2d at 1033 (alteration in original) (quoting *Norman*, 836 F.2d at 1299). Plaintiff's attorney, in the affidavit (doc. 22-2) executed by him, states that "[t]he fees customarily charged in this locality for similar legal services range from $125.00 per hour to $250.00 per hour according to known information." (*Id.* at 4, ¶ 6). The Court's "own knowledge and experience concerning reasonable and proper fees," *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)[3]), confirms that the prevailing market rate is somewhere between $125.00 per hour and $250.00 per hour and thus is greater than the statutory cap of $125.00 per hour.

Because the prevailing market rate is greater than the statutory cap of $125.00, the Court must determine whether it "should adjust the hourly fee upward from $[125.00] to take into account an increase in the cost of living, or a

---

[3] This is binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding on all federal courts in the Eleventh Circuit).

special factor." *Meyer*, 958 F.2d at 1033-34. The Court determines that it should

take into account the increase in the cost of living and thus adjust the statutory cap

upward from $125.00. Plaintiff argues that after adjusting the statutory cap for

increases in the cost of living by using the Consumer Price Index ("CPI"), the

statutory cap in each relevant year is as follows: (1) 2015: $190.87 per hour; (2)

2016: $192.67 per hour; (3) 2017: $196.78 per hour; and (4) 2018: $202.31 per

hour. (Doc. 22-3 at 5-7). The Court's independent calculations, however, show

that the statutory cap in each relevant year is as follows: (1) 2015: $190.28; (2)

2016: $192.68; (3) 2017: $196.79;[4] and (4) 2018: $201.34.[5]

---

[4] The adjusted statutory caps for 2015, 2016, and 2017 were calculated by first calculating the "cost-of-living percentage increase[s] from March 1996 through [2015, 2016, and 2017]." *Ingels v. Commissioner*, No. 16-1581, 2018 WL 1832214, at *1 n.3 (M.D. Fla. Apr. 9, 2018). The cost-of-living percentage increases were calculated "by taking the 'Annual' CPI rate for [2015, 2016, and 2017] and subtracting from [them] the March 1996 rate[, which was 155.7] . . . and then dividing that number by the March 1996 rate." *Id.* Then, the adjusted statutory caps were calculated by applying these cost-of-living percentage increases "to the statutory rate of $125.00." *Id.* Thus, the formula that was used is as follows: "Adjusted Statutory Cap" = ((("Annual CPI for the relevant year" – 155.7)/155.7) + 1) X $125.00. The Annual CPI's for 2015, 2016, and 2017 are as follows: (1) 2015: 237.017; (2) 2016: 240.007; (3) 2017: 245.120. *See* Bureau of Labor Statistics, U.S. Dep't of Labor, CPI-All Urban Consumers (Current Series), http://data.bls.gov/cgi-bin/surveymost?bls (last visited Oct. 17, 2018) ("check box next to 'CPI for All Urban Consumers (CPI-U) 1982-84=100' and click on 'Retrieve data' button, then check the box next to 'include annual averages' and click on 'GO' button," *Ingels*, 2018 WL 1832214, at *1 n.3). The Court notes that the discrepancy between Plaintiff's $190.87 hourly rate for 2015 and the Court's $190.28 hourly rate for 2015 is because Plaintiff used the "Half 2 CPI" of 237.769 instead of the "Annual CPI" of 237.017 for 2015. (*See* doc. 22-3 at 5-6) (stating incorrectly that the "Annual 2015 CPI figure . . . [is] 237.769," although 237.769 is actually the "Half 2 CPI" figure).

[5] The adjusted statutory cap for 2018 was calculated using the same method that was used to calculate the adjusted statutory caps for 2015, 2016, and 2017. However, because 2018 is

Plaintiff requests an award of attorney's fees using the following hourly rates, which (except for the requested hourly rate for 2016) happen to be equal to the adjusted statutory caps that Plaintiff calculated: (1) 2015: $190.87 per hour; (2) 2016: $190.84 per hour;[6] (3) 2017: $196.78 per hour; and (4) 2018: $202.31 per hour. (Doc. 22 at 1; doc. 22-3 at 4). The Court will decrease these requested rates so that they are all below the adjusted statutory caps that the Court calculated, which results in the following hourly rates: (1) 2015: $190.28; (2) 2016: $190.84; (3) 2017: $196.78; and (4) 2018: $201.34. Consistent with numerous district court decisions, including decisions from districts courts within the Eleventh Circuit, the Court finds that these hourly rates, which closely resemble the adjusted statutory caps, are reasonable hourly rates; thus, the Court

_____

not yet over and thus an "Annual CPI" is not yet available for 2018, the Court used the average CPI over the first nine months of 2018, *see Ingels*, 2018 WL 1832214, at *1 n.5, which is the time period in 2018 during which Plaintiff's attorney worked on this case. (*See* doc. 22-2 at 10-11). The average CPI over the first nine months of 2018 is 250.792. The Court notes that the discrepancy between Plaintiff's $202.31 statutory cap for 2018 and the Court's $201.34 statutory cap for 2018 is because Plaintiff used the "July 2018 CPI figure" instead of the average CPI over the first nine months of 2018. (*See* doc. 22-3 at 6).

[6] The Court notes that while Plaintiff argues that the statutory cap for 2016 is $192.67 per hour (doc. 22-3 at 6) ("[T]he $125.00 statutory cap should be increased as follows to account for the increase in the cost of living which has occurred from March of 1996. 2016: $192.67 an hour." (boldface omitted)) (*see also* doc. 22-2 at 6) (same), Plaintiff calculated and requested attorney's fees using $190.84 as the hourly rate. (Doc. 22 at 1; doc. 22-3 at 4). Although the Court suspects that this may have been a mistake, the Court will not deviate from the $190.84 per hour that Plaintiff requests. After all, $192.67 (or, as the Court calculated it, $192.68) is the statutory cap. Thus, it is the maximum hourly rate that Plaintiff can recover under the EAJA; it is not what Plaintiff must recover under the EAJA.

will use these hourly rates to calculate the lodestar. *See, e.g.*, *Ellis v. Berryhill*, No. 17-34, 2018 WL 4101509, at *3-4 (S.D. Ala. Aug. 28, 2018) (finding the adjusted statutory cap to be $194.67 and using $194.67 as the reasonable hourly rate to calculate the lodestar); *Ingels*, 2018 WL 1832214, at *1 (awarding attorney's fees at the requested rates of $192.67 for 2016 and $195.95 for 2017 and 2018 because "the rates requested . . . [did] not exceed the EAJA cap of $125.00 per hour adjusted for inflation," which the *Ingels* court calculated to be $192.69 for 2016, $196.78 for 2017, and $199.43 for January and February 2018); *see also, e.g.*, *Nat'l Venture Capital Ass'n v. Nielson*, 318 F. Supp. 3d 145, 151-52 (D.D.C. 2018) (using the adjusted statutory caps of $196.78 in 2017 and $198.99 in 2018 as the reasonable hourly rates to calculate the lodestar).

<blockquote>
2.    <u>The Court finds that Plaintiff's attorney reasonably expended 84.7 hours and thus will award attorney's fees for 84.7 hours of work done by Plaintiff's attorney</u>
</blockquote>

Plaintiff requests an award of attorney's fees for a total of 84.7 hours, broken down by year as follows: (1) 2015: 1.8 hours; (2) 2016: 26.8 hours; (3) 2017: 1.5 hours; and (4) 2018: 54.6 hours. (Doc. 22 at 1). Plaintiff has provided an invoice for legal services rendered (doc. 22-2 at 9-11) that was prepared by her attorney and that lists discrete tasks, the number of hours that Plaintiff's attorney spent working on each task, and the total number of 84.7 hours that Plaintiff's

attorney spent working on this case. (*Id.*) Plaintiff argues that her attorney "expended a reasonable number of total hours [on this] case" because "[a]ll hours spent [on] this case could properly be billed to one's client, and include such tasks as preparing court documents and briefs, reviewing court orders, telephone calls, and correspondence." (Doc. 22-3 at 7) (citing *Hensley*, 461 U.S. at 433-34).

The Commissioner, however, argues that "the requested number of hours is unreasonable." (Doc. 23 at 2). The Commissioner argues that "Plaintiff bears the burden of showing that the hours requested are reasonable," (*id.* at 6) (citing *Hensley*, 461 U.S. at 437), and that "[i]t is incumbent upon the court to exclude those hours that are excessive, redundant, or otherwise unnecessary." (*Id.* at 2) (citing *Norman*, 836 F.2d at 1301). Accordingly, the Commissioner requests that the Court "scrutinize the numbers of hours submitted and determine whether they were 'reasonably expended.'" (*Id.* at 3) (quoting *Hensley*, 461 U.S. at 434).

As requested by the Commissioner—and as required by the case law—the Court will determine whether the 84.7 hours were "reasonably expended." *See Hensley*, 461 U.S. at 434. However, the Court will begin by clarifying the standard. Unlike the Commissioner argues, Plaintiff does not bear the burden of showing that the hours requested are reasonable. Instead, *Hensley* clear states that "the fee applicant bears the burden of . . . <u>documenting</u> the appropriate hours

expended." *Hensley*, 461 U.S. at 437 (emphasis added). The Commissioner is

correct that, after Plaintiff has met this burden, the number of documented hours

can be reduced for excessive or unnecessary work; however, the decision of

whether to reduce the number of hours is soundly within the discretion of the

Court. *See Norman*, 836 F.2d at 1301. ("In the final analysis, exclusions for

excessive or unnecessary work on given tasks must be left to the discretion of the

district court."); *see also Bowman v. Commissioner*, No. 13-614, 2014 WL

5472453, at *2 (M.D. Fla. Oct. 22, 2014) ("The court must exercise its

independent judgment when reviewing a claim for hours reasonably expended."

(citing *Norman*, 836 F.2d at 1301-02)). Because "the hours [that should be]

excluded are those that would be <u>unreasonable to bill to a client</u> and therefore

[would be unreasonable to bill] to one's adversary," the Court "[would][] . . . be

benefit[t]ed by evidence of prevailing views among [social security appeal]

practitioners in the area" regarding the reasonableness of the requested hours. *See*

*Norman*, 836 F.2d at 1301 (emphasis added). "The [C]ourt . . . should bear in

mind that the measure of reasonable hours is determined by the profession's

judgment of the time that may be conscionably billed and not the least time in

which it might theoretically have been done." *Id.* at 1305-06. When exercising its

discretion, the Court "<u>must</u> be reasonably precise in excluding hours thought to be

unreasonable or unnecessary." *Id.* at 1301. (emphasis added). Because the Court

"must be reasonably precise in excluding hours thought to be unreasonable or

unnecessary," "objections and proof from fee opponents" should also be

"reasonably precise." *Id.* (emphasis added).

Here, Plaintiff has met her burden by providing the invoice for legal

services that documents the number of hours expended for each task and the total

number of 84.7 hours that her attorney spent on this case. (*See* doc. 22-2 at 9-11).

Thus, the 84.7 hours cannot be reduced for failure to meet the burden of

documenting them; instead, the decision of whether to reduce these hours is within

the discretion of the Court. *See Norman*, 836 F.2d at 1301. Upon due

consideration, the Court will not reduce the number of hours for three reasons.

> a. *The Court finds 84.7 hours reasonable because Plaintiff's attorney could conscionably bill her for these hours*

First, the Court has reviewed the invoice of legal services (doc. 22-2 at 9-

11) and determined that Plaintiff's attorney could conscionably bill Plaintiff for all

the hours for which Plaintiff seeks attorney's fees. *See Norman*, 836 F.2d at 1305-

06. ("The [C]ourt . . . should bear in mind that the measure of reasonable hours is

determined by the profession's judgment of the time that may be conscionably

billed and not the least time in which it might theoretically have been done.").

   b. *The Court cannot be reasonably precise in excluding the hours claimed by the Commissioner to be unreasonable or excessive*

  Second, given the current status of the record, the Court cannot be "reasonably precise in excluding hours [claimed by the Commissioner] to be unreasonable or unnecessary." *See id.* at 1301. Importantly, the record does not contain—nor did the Commissioner offer—the opinion of any private attorney practicing in social security appeals and the disability area stating that the hours for which Plaintiff requests attorney's fees are excessive. *See id.* ("In the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court. The district court will, however, no doubt be benefit[t]ed by evidence of prevailing views among practitioners in the area on such subjects.").

  Additionally, the only case that Commissioner cites to support her argument that Plaintiff's requested number of hours is excessive is *Huntley v. Commissioner*, No. 12-613, 2013 WL 5970717 (M.D. Fla. Nov. 8, 2013). (Doc. 23 at 6). Citing *Huntley*, 2013 WL 5970717, at *2 n.1, the Commissioner argues that "the 57.2 hours requested by Plaintiff's attorney *solely for his work before this Court* is nearly double the amount other courts in this Circuit have acknowledged as reasonable." (Doc. 23 at 6) (citing *Huntley*, 2013 WL 5970717, at *2 n.1). In

21

the footnote to which the Commissioner cites, the *Huntley* court stated that "[its] review of attorney's fees awarded in [the Middle District of Florida] in recent months indicate[d] that an award in excess of thirty hours is uncommon" and then cited twelve cases that it had reviewed. *Huntley*, 2013 WL 5970717, at *2 n.1 (emphases added). This footnote in *Huntley*, however, does not support the Commissioner's argument for three reasons. First, the Commissioner argues that "57.2 hours . . . is nearly double the amount other courts in this Circuit have acknowledged as reasonable." (Doc. 23 at 6). However, the *Huntley* court is clear that it only reviewed "attorney's fees awarded in [the Middle District of Florida] in recent months." *Huntley*, 2013 WL 5970717, at *2 n.1 (emphases added). Thus, the Commissioner presents an argument that is too broad to be supported by the review conducted by the *Huntley* court of twelve cases that were all decided in the Middle District of Florida between April 24, 2013, and October 31, 2013. *See id.* Second, the *Huntley* court only stated that "an award in excess of thirty hours is uncommon." *Id.* Just because an award in excess of thirty hours is uncommon, however, does not mean, as the Commissioner argues, that it is unreasonable. In fact, the Middle District of Florida found that 58.8 hours for work completed before the district court was reasonable in *Davis v. Apfel*, No. 98-651, 2000 WL 1658575, at *4 (M.D. Fla. Aug. 14, 2000) (citing *Dunn v. Shalala*, No. 92-4090,

1995 WL 23116 (N.D. Ill. Jan. 19, 1995)). Third, even ignoring these first two

problems, the footnote in *Huntley* still would not support the Commissioner's

argument. This is because all twelve cases that the *Huntley* court reviewed and

cited involved the district court accepting as reasonable the exact number of hours

that the plaintiff requested. *See, e.g.*, *Cruz v. Colvin*, No. 12-283, 2013 WL

5888116, at *1 (M.D. Fla. Oct. 31, 2013) ("Plaintiff seeks an award based on

23.70 hours of attorney time. Upon review of plaintiff's counsel's time records, the

Court finds the time spent is reasonable.").[7] Hence, those cases—and,

---

[7] *See also Stone v. Commissioner*, No. 12-637, 2013 WL 5487006, at *2 (M.D. Fla. Sept. 30, 2013) ("The Plaintiff seeks an award based on 14.2 hours of attorney time. The Court believes 14.2 hours of attorney time is reasonable in this case."); *Gonzalez v. Colvin*, No. 12-674, 2013 WL 5308093, at *1 (M.D. Fla. Sept. 19, 2013) ("The claim of 19.65 hours for services performed in this case appears reasonable. Importantly, the defendant has not challenged that claim."); *Wade v. Commissioner*, No. 12-853, 2013 WL 5236673, at *2 (M.D. Fla. Sept. 17, 2013) ("The Plaintiff seeks an award based on 20.2 hours of attorney time. The Court believes 20.2 hours of attorney time is reasonable in this case."); *Preston v. Colvin*, No. 12-482, 2013 WL 4502263, at *2 (M.D. Fla. Aug. 22, 2013) ("The Plaintiff seeks an award based on a total of 24.5 hours of attorney time. The Court believes the attorney time is reasonable in this case[] . . . ."); *Karboski v. Colvin*, No. 12-2033, 2013 WL 4437239, at *2 (M.D. Fla. Aug. 16, 2013) ("Plaintiff requests an award of $4,536.65 in attorney's fees, representing 24.7 hours at an hourly rate of $183.67 as well as costs in the amount of $350.00. . . . The Court also determines that 24.7 hours of attorney time is reasonable in this case."); *Kearney v. Colvin*, No. 12-1961, 2013 WL 3155032, at *2 (M.D. Fla. June 19, 2013) ("Plaintiff seeks an award based on a total of 22.3 hours of attorney time. The Court believes 22.3 hours of attorney time is reasonable in this case."); *Groninger v. Colvin*, No. 11-1931, 2013 WL 2708779, at *2 (M.D. Fla. June 11, 2013) ("Plaintiff seeks an award based on a total of 28.8 hours of attorney time. The Court believes 28.8 hours of attorney time is reasonable in this case."); *Daymon v. Colvin*, No. 11-1108, 2013 WL 2479962, at *2 (M.D. Fla. June 10, 2013) ("The Plaintiff seeks an award based on a total of 29 hours of attorney time. The Court believes the attorney time is reasonable in this case[] . . . ."); *Spahiu v. Colvin*, No. 11-1138, 2013 WL 2431969, at *2 (M.D. Fla. June 4, 2013) ("The Plaintiff seeks an award based on a total of 20.8 hours of attorney time. The Court believes the attorney time is reasonable in this case[] . . . ."); *Zupo v. Colvin*, No. 11-2857, 2013 WL 2352198, at *1

23

consequently, the footnote in *Huntley* that the Commissioner cites—only stand at most for the proposition that when a fee award for less than thirty hours is requested, the requested number of hours is commonly found to be reasonable; they do not support an argument that 57.2 hours is unreasonable. *Cf. Bowman*, 2014 WL 5472453, at *3 (finding the Commissioner's citation to *Huntley* unpersuasive).

Beyond *Huntley*, the Commissioner only offers her naked assertions and unsupported reasoning that the hours spent are excessive and unreasonable. Thus, the Commissioner fails to offer "reasonably precise . . . proof" as to why the number of hours requested are excessive and unreasonable. *See Norman*, 836 F.2d at 1301.

    c.    *The Court rejects the Commissioner's specific arguments as to why the hours spent on certain tasks are excessive and unreasonable*

Third, the Court rejects the Commissioner's specific arguments as to why Plaintiff's requested hours are excessive and unreasonable. The Commissioner argues that the "34.5 hours" that Plaintiff's attorney spent on "research, transcript

_____

(M.D. Fla. May 29, 2013) ("The claim of 21.90 hours for services performed in this case appears reasonable. Importantly, the defendant has not challenged that claim."); *White v. Commissioner*, No. 12-367, 2013 WL 1760221, at *2 (M.D. Fla. Apr. 24, 2013) ("The Plaintiff seeks an award based on a total of 21.5 hours of attorney time. The Court believes 21.5 hours of attorney time is reasonable in this case.").

review, preparing the statement of facts, and editing" for Plaintiff's "opening brief" (doc. 16) are excessive and that the "8.9 *additional* hours [that Plaintiff's attorney spent] researching and drafting a 9-page reply brief" (doc. 18) are excessive. (Doc. 23 at 3-5). The Court will first address the Commissioner's arguments regarding Plaintiff's opening brief. The Court will then address the Commissioner's arguments regarding Plaintiff's reply brief.

Regarding the 34.5 hours spent on the opening brief that the Commissioner argues is excessive, the Commissioner breaks down her argument into certain tasks, and the Court will address these more specific arguments in turn. First, the Commissioner argues that the "1.5 hours" that Plaintiff's attorney spent "researching the credibility issue alone" was excessive because the credibility issue is "an issue in which an attorney with experience representing Social Security claimants would be well versed" and because Plaintiff's attorney "spent only 2.5 hours *drafting* the credibility argument." (*Id.* at 4). However, the Court does not find 1.5 hours to be excessive for this research. *See Sommerville v. Astrue*, 555 F. Supp. 2d 1251, 1254 (D. Kan. 2008) ("[T]he fact that plaintiff's attorney has the expertise to handle a case with greater efficiency than other practitioners means little in this context, as this court will not disregard time honestly spent working on the brief simply because the attorney preparing it is

experienced. As such, plaintiff's request is granted."). Further, the Commissioner does not state how long an inexperienced attorney would take to research this issue, and thus it is quite possible that Plaintiff's attorney did indeed spend fewer hours researching this issue than a less experienced attorney would have spent researching this issue. The Court also notes that a low ratio of time spent drafting an argument to time spent researching an argument does not always mean that the time spent researching that argument was excessive. After all, it makes sense that the better an attorney researches an issue and an argument, the less time its takes him to draft the argument.

Second, the Commissioner argues that the "10.3 hours" that Plaintiff's attorney spent "preparing the statement of facts" for the opening brief is excessive because "this Court's scheduling order did not require [that] the brief contain a fact section." (Doc. 23 at 4-5) (citing doc. 12). However, the Court notes that opening briefs by plaintiffs commonly contain a fact section. Indeed, Plaintiff responds to the Commissioner's argument by stating that her attorney "has always included a Statement of the Case and . . . Statement of Facts in every brief filed in the appeal of a Social Security disability claim" and that, "[f]or the first time[,] the Commissioner [now] argues that the Statement of Facts is unnecessary." (Doc. 24 at 4).

Third, the Commissioner argues that the "6.9 hours" that Plaintiff's attorney spent "for transcript review . . . in the district court matter" and the "7 hours" that Plaintiff's attorney spent "for transcript review at the administrative level" are "duplicative and excessive given the transcript's average length of 855 pages." The Court finds that the hours spent on transcript review at the two levels are not duplicative, especially when, as here, the transcript reviews occurred more than one year apart. (*See* doc. 22-2 at 10-11). After all, an attorney must be prepared at both the administrative level and the district court level. The Court also finds that 13.9 hours spent reviewing an 855-page transcript is not excessive. *See Walsh v. Astrue*, No. 11-6033, 2012 WL 3987289, at *2 (W.D. Ark. Aug. 22, 2012) ("Defendant objects to Plaintiff's request of 22.50 hours spent for reviewing the administrative transcript as excessive. Defendant does not state why this request is excessive or what number of hours for transcript review would be reasonable. Given the transcript in this matter exceeded 800 pages, the lack of specific objections to the claimed review, and Defendant's lack of specificity regarding a reasonable amount of time to review an 800 page transcript, the Court does not find the number [of] hours claimed for transcript review excessive." (emphases by underlining added) (emphasis by bolding omitted) (citation omitted)), report and recommendation adopted, No. 11-6033, 2012 WL 3987276 (W.D. Ark. Sept. 11,

2012).[8]

Fourth, the Commissioner argues that the 11.3 hours that Plaintiff's attorney "spent editing the opening brief" is excessive and that "approximately half that time, or 5.5 hours, is more than reasonable to edit a brief, particularly given the attorney's assertion that he spent nearly 30 hours meticulously writing it." (Doc. 23 at 5) (citing doc. 22-2 at 10-11). However, the Commissioner's argument is based on false premises. Plaintiff's attorney did not spend nearly 30 hours meticulously writing the opening brief; instead, Plaintiff's attorney spent nearly 30 hours reviewing the transcript, conducting legal research, and drafting the opening brief. (Doc. 22-2 at 10-11). More specifically, of these nearly 30 hours, only 18 hours were spent "[d]rafting" the opening brief. (*Id.*) Additionally, Plaintiff's

_____

[8]  Further, the Court believes that the Commissioner is incorrect that Plaintiff's attorney only reviewed an 855-page transcript. In her reply brief in support of the Motion, Plaintiff states that the "transcript contained 1,465 pages" (doc. 24 at 3) and argues that a total of 13.9 hours spent reviewing a transcript over 1,000 pages is not excessive. (*Id.*) (citing *Sommerville*, 555 F. Supp. 2d at 1254). The discrepancy regarding the length of the transcript appears to be caused by Plaintiff referring to the full transcript and the Commissioner referring only to the supplemental transcript that was filed after the administrative proceedings pursuant to the sentence-six remand. (*See* doc. 11-1; doc. 11-2). Further, it appears from the invoice for legal services that Plaintiff's attorney spent 7 hours reviewing 1,323 pages of the transcript at the administrative level and then spent 6.9 hours reviewing the transcript over a year later at the district court level (although the invoice for legal services does not reflect whether Plaintiff's attorney reviewed all 1,465 pages of the transcript or just the 855 pages of the supplemental transcript). (Doc. 22-2 at 10). The Court finds these hours (even if Plaintiff's attorney only reviewed the 855-page supplemental transcript for his 6.9 hours of review at the district court level) to be reasonable on this record. Further, the Court notes that, as stated above, even assuming that the Commissioner is correct that Plaintiff's attorney spent 13.9 hours reviewing only the 855-page supplemental transcript, the 13.9 hours are not excessive and are reasonable. *See Walsh*, 2012 WL 3987289, at *2.

attorney did not spend all 11.3 hours "editing the opening brief". Instead, Plaintiff's attorney actually spent those 11.3 hours "editing" the opening brief <u>and</u> doing a "final review of [the] opening brief." (*Id.*) Further, the Commissioner offers no reason why 5.5 hours is a sufficient amount of time to edit a 57-page opening brief—especially one that an attorney has only "[d]rafted" and has not "meticulously writ[ten]." Thus, the Court finds that the 11.3 hours that Plaintiff's attorney spent editing (and doing a final review of) the opening brief is not excessive and is reasonable. Accordingly, the Court will not deduct any hours that Plaintiff's attorney spent working on the opening brief as excessive or unreasonable.

Now, the Court will address the Commissioner's argument that the "8.9 *additional* hours [that Plaintiff's attorney spent] researching and drafting a 9-page reply brief" are excessive. (Doc. 23 at 5). The Court notes, however, that Plaintiff's attorney actually spent only 8.4 hours researching and drafting the reply brief (2.5 hours conducting further legal research for the reply brief and 5.9 hours drafting the reply brief). (*See* doc. 22-2 at 11). Still, because 8.4 hours is close to 8.9 hours, the Court will address the Commissioner's three arguments as to why

these hours are excessive.[9] First, the Commissioner argues that the reply brief "addressed the same substantive issues as the opening brief." (Doc. 23 at 5). The Court notes, however, that this does not necessarily mean that the hours spent on the reply brief were excessive; indeed, reply briefs frequently address the same substantive issues as the opening brief. Second, the Commissioner argues that "portions of the opening brief are cut and pasted or just slightly re-worded in the reply brief." (*Id.*) (citing doc. 16 at 30, 33; doc. 18 at 4, 6). The Court, however, has reviewed the pages of the opening brief and the reply brief that the Commissioner cites, and the Court disagrees that "portions of the opening brief are cut and pasted or just slightly re-worded in the reply brief." Even if this were true—which, again, the Court disputes—it is true of at most two pages of a 9-page reply brief, providing an insufficient basis to argue that the 8.9 hours spent were excessive; after all, Plaintiff's attorney might have spent more time on the reply brief if these two pages were not, as the Commissioner argues, "cut and pasted or just slightly re-worded" from what he wrote in the opening brief. Third, the Commissioner argues that the 8.9 hours is "excessive considering the brevity of Plaintiff's reply and the thoroughness of Plaintiff's opening brief, which should

---

[9] Because the Court will address the Commissioner's arguments regarding why 8.9 hours are excessive, the Court will refer, as the Commissioner did, to 8.9 hours. However, the Court notes that every time it references 8.9 hours, the time actually spent was 8.4 hours.

translate to greater efficiency with respect to researching and writing a reply." (*Id.*) (emphasis added). However, the Eleventh Circuit has stated that a district court "should bear in mind that the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." *Norman*, 836 F.2d at 1306 (emphasis added). Thus, even if Plaintiff's attorney could have theoretically researched and drafted the reply brief in fewer than 8.9 hours, the Court cannot reduce the number of requested hours for that reason. Thus, the Court will not deduct any hours that Plaintiff's attorney spent working on the reply brief as excessive or unreasonable.

### 3. The lodestar is $16,745.34, and the Court will not adjust it

After determining the reasonable hourly rate and the reasonable number of hours that Plaintiff's attorney spent working on this case, the Court must calculate the lodestar. The lodestar is $16,745.34, and the Court calculated the lodestar as follows:

Lodestar = the sum of:

2015: $190.28 per hour X 1.8 hours = $342.50

2016: $190.84 per hour X 26.8 hours = $5,114.51

2017: $196.78 per hour X 1.5 hours = $295.17

2018: $201.34 per hour X 54.6 hours = $10,993.16

Lodestar = $342.50 + $5,114.51 + $295.17 + $10,993.16

Lodestar = $16,745.34

After calculating the lodestar, "the court must next consider the necessity of an adjustment for results obtained." *Norman*, 836 F.2d at 1302. The Commissioner does not argue that the lodestar should be reduced. Further, although Plaintiff lost on some issues because the Court affirmed in part the decision of the Commissioner (*see* docs. 19, 20), where, as here, "all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. It is improper to make the reduction based on a simple ratio of successful issues to issues raised." *Norman*, 836 F.2d at 1302 (citations omitted). Thus, the Court will focus on the "overall results" obtained and not on the result of each issue. Focusing on the overall results obtained, the Courts notes that Plaintiff obtained the relief she sought—a sentence-four remand. Thus, the lodestar need not be adjusted downward. Accordingly, the lodestar is $16,745.34, and Plaintiff will be awarded attorney's fees in the amount of $16,745.34.

## C.    The Court Will Award Plaintiff $625.68 in Costs

Plaintiff requests $625.68 in costs. (Doc. 22 at 1; doc. 22-3 at 9). Plaintiff

has provided an itemized list of the costs (doc. 22-2 at 12-13), which show that the costs were incurred in obtaining medical records and pharmacy records. (*See id.*; doc. 22-3 at 9). The Commissioner does not challenge Plaintiff's requests for costs.

The EAJA provides in relevant part that "a court shall award . . . fees and other expenses." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). "'[F]ees and other expenses' includes . . . the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A). Upon due consideration, the Court finds that the medical records and pharmacy records were "necessary for the preparation of [Plaintiff's] case." See *id.* Accordingly, the Court will award Plaintiff $625.68 in costs. *See Cook v. Astrue*, No. 09-72, 2011 WL 1549212, at *2, *4 (N.D. Fla. Mar. 21, 2011) (awarding, *inter alia*, $52.00 in expenses, which "were incurred in obtaining certain of [the] [p]laintiff's medical records"), report and recommendation adopted, No. 09-72, 2011 WL 1539771 (N.D. Fla. Apr. 21, 2011).

> **D.  The Attorney's Fees and Costs Shall Be Paid to Plaintiff, Unless the Commissioner Decides To Waive the Provisions of the Anti-Assignment Act, in Which Case the Attorney's Fees and Costs Shall Be Paid to Plaintiff's Attorney**

Plaintiff has executed an affidavit (doc. 22-1) in which she purports to

"assign any entitlement that [she] may have to a fee under the [EAJA] to [her]

attorney, Seth B. Thompson." (*Id.* at 1, ¶ 3). The Commissioner responded as

follows:

> Upon entry of an order granting EAJA fees to Plaintiff, the
> Commissioner will determine whether Plaintiff owes a debt to the
> government that qualifies under the Treasury Offset Program, 31
> U.S.C. §§ 3711 and 3716, which allows for the collection of a federal
> debt from the amount awarded to Plaintiff. If Plaintiff does owe a
> debt to the Government, her EAJA fee award will be applied toward
> such debt by the Treasury Department's Offset Program, see Astrue v.
> Ratliff, 560 U.S. 586, 590 (2010), and the Commissioner will notify
> the Treasury Department that if any funds remain after the EAJA fee
> award is applied to her debt, the Treasury Department should issue a
> check for the remaining funds made payable to Plaintiff and mail that
> check to Plaintiff's counsel. If the United States Department of the
> Treasury determines that Plaintiff does not owe a debt that is subject
> to offset, the government will accept the assignment of EAJA fees
> and pay such fees directly to Plaintiff's attorney.

(Doc. 23 at 6-7). Because Plaintiff's purported assignment of her right to EAJA

fees occurred before the Court awarded any fees, the purported assignment is

invalid under the Anti-Assignment Act; however, the Commissioner has the

discretion to "waive the Anti–Assignment Act provisions and honor the

assignment." *See, e.g.*, *Meola v. Commissioner*, No. 11-421, 2012 WL 4077874, at

*2 (M.D. Fla. Sept. 17, 2012); *see also Astrue*, 560 U.S. at 597 (noting the

Commissioner's practice of directly paying claimants' attorneys "in cases where

'the plaintiff does not owe a debt to the government and assigns the right to receive the fees to the attorney.'" (citing source)).

Accordingly, the $16,745.34 in attorney's fees and the $625.68 in costs shall be paid to Plaintiff, with the exception that "[i]f the United States Department of the Treasury determines that Plaintiff does not owe a debt that is subject to offset" (doc. 23 at 7) and the Commissioner then waives the provisions of the Anti-Assignment Act and accepts Plaintiff's purported assignment, the attorney's fees and costs shall be paid to Plaintiff's attorney, Seth B. Thompson.

## IV. CONCLUSION

For the reasons stated in this opinion, the Motion is **GRANTED** in part and **DENIED** in part. More specifically, it is **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1. Plaintiff Angela T. Barbee, as the prevailing party, is hereby **AWARDED** under the EAJA attorney's fees of sixteen thousand seven hundred forty-five dollars and thirty-four cents ($16,745.34) and costs of six hundred twenty-five dollars and sixty-eight cents ($625.68).

2. Such payment **SHALL** be made to Plaintiff Angela T. Barbee, unless the Commissioner waives the provisions of the Anti-Assignment Act and accepts Plaintiff's purported assignment of her attorney's fees and costs, in

which case such payment **SHALL** be made to Plaintiff's attorney, Seth B.

Thompson.

**DONE** and **ORDERED** this the 19th day of October, 2018.

**VIRGINIA EMERSON HOPKINS**
Senior United States District Judge